[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The State of Connecticut initiated this paternity case against the named defendant pursuant to General Statutes § 46b-162. The petition alleges that the defendant Kyle L. Roberts is the father of a minor child Kamron L. Romero born August 10, 2000 to the named plaintiff mother Ivelisse Romero. Both parties appeared in court pro se on the return date, June 5, 2001. After a thorough canvass of the defendant, the State proceeded to trial. The State introduced a DNA test indicating a 99.90% probability that the defendant is Kamron's father. The defendant admitted paternity and the court entered a judgment accordingly. After the filing of financial affidavits and further testimony, the court also entered support orders and finds regarding arrearages. At the conclusion of the proceedings the State requested that the defendant be ordered to pay costs, including service of process fees and reimbursement for the cost of the DNA test. The defendant objected to payment of the DNA test.
The court did not order genetic tests in this case. The Department of Social Services ordered genetic testing pursuant to its statutory authority. "In any IV-D support case, . . . in which the paternity of a child is at issue, the IV-D agency shall require the child and all other parties . . . to submit to genetic tests . . . to determine whether or not the putative father or husband is the father of the child, upon the request of any such party." General Statutes § 46b-168a(a). In this matter the test was completed administratively under the auspices of the Department of Social Services before the paternity action was even commenced. The defendant claims that it was the plaintiff, not he, that requested the DNA test. Therefore, he reasons, he should not be required to pay for the tests. CT Page 9755
This court finds that it lacks subject matter jurisdiction to order the defendant to pay the costs of the administratively ordered genetic test. The Family Support Magistrate Division is a statutory court and is limited to act within the statutory powers granted to it. Holden v.Skinner, 7 S.M.D. 19, 24 (1993). "The Family Support Magistrate is not a Judge of the Superior Court and does not have full judicial powers, Conn. Constitution, Article Fifth; Article XX of Amendments; Article XXV of Amendments; Brown v. O'Connell, 36 Conn. 432 (1870); Betts v. Town ofNew Hartford, 25 Conn. 180 (1856); Osborn v. Stamford Zoning Board ofAppeals, 11 Conn. Sup. 489 (1943). The judicial powers of the Family Support Magistrate are limited to those established by the General Assembly in the Family Support Magistrate's Act, General Statutes §46b-231, and related sections and public acts." Dalley v. Wineglass, 11 S.M.D. 1, 26 (1997); Jorgensen v. Jorgensen, 1 S.M.D. 34 (1987).
Unlike a judge of the Superior Court, the powers of a Family Support Magistrate to enforce support orders are wholly statutory. General Statutes § 46b-231(m)(1) and (7)[1] . Reynolds v. Allicock, 15 S.M.D. ___, 2001 Ct. Sup. 2456 (2001). Where an action "depends upon statutory authority . . . noncompliance with the statutory requirements implicates subject matter jurisdiction and renders a nonconforming [action] subject to dismissal." Tolly v. Department of Human Resources,225 Conn. 13, 27, 621 A.2d 719 (1993); McQuillan v. Department of LiquorControl, 216 Conn. 667, 670, 583 A.2d 633 (1990); Tarnopol v. ConnecticutSitting Council, 212 Conn. 157, 163, 561 A.2d 931 (1989); HillcroftPartners v. Commission on Human Rights Opportunities, 205 Conn. 324,326-27, 533 A.2d 852 (1987); Chestnut Realty, Inc. v. Commission on HumanRights Opportunities, 201 Conn. 350, 356, 514 A.2d 749 (1986);Basilicato v. Department of Public Utility Control, 197 Conn. 320, 324,497 A.2d 48 (1985); Exchange Buffet Corporation v. Rogers, 139 Conn. 374,376, 94 A.2d 22 (1952); Collins v. Beaver, 14 S.M.D. 432, 435,2000 Ct. Sup. 16290 (2000); Greenwood v. Velsor, 7 S.M.D. 65, 71, 13 Conn.Fam.L.J. 15 (1993).
"[T]here is no express grant of authority in General Statutes §46b-168a authorizing the family support magistrates to order the requesting party to reimburse the state for the costs of genetic testing when such testing was ordered by Department of Social Services. Moreover, there is no such express grant of power m the Family Support Magistrate Act." Morrison v. Lindberg, 14 S.M.D. 345, 347,28 Conn. L. Rptr. 611, 2000 Ct. Sup. 14094 (2000); Figueroa v. Molina, 14 S.M.D. 318, 320, 28 Conn. L. Rptr. 336, 2000 Ct. Sup. 13165 (2000).
"The costs of making the tests . . . shall be paid by the state, provided if the putative father is the requesting party and he is CT Page 9756 subsequently adjudicated to be the father of the child, he shall beliable to the state for the amount of such costs to the extent of his ability to pay, in accordance with regulations adopted by the Commissioner of Social Services." (emphasis added) General Statutes § 46b-168a(b). The plain language of the statute places the costs of administratively ordered tests on the State except for one specifically limited situation. If the putative father is the party requesting the tests, then he becomes liable to the State for the costs of the test. The statute does not require, or even authorize the court to order this payment[2] .
The declaration that a party may be liable for a certain debt is a far cry from authorizing this statutory court to order him to pay that liability. Examples abound. A putative father may contract with a medical provider for pre-natal care of the mother. He is contractually liable to the provider, and the debt is related to the childbirth. Clearly this court has no jurisdiction to order the putative father to pay this debt. Had the legislature intended the Family Support Magistrate to have the authority to order the payment of the genetic test, it could have easily done so.
Nor is it within the power of the court to deem the DNA test a cost of the action. It is noteworthy that in this case, not only was the test ordered outside the jurisdiction of the court, but before the action waseven filed. The court can not interpret the phrase "he shall be liable" to usurp a power to order a payment on a debt that predated the filing of the action absent specific statutory authority[3] . "Courts cannot, by construction, read into statutes provisions which are not clearly stated." Houston v. Warden, 169 Conn. 247, 251, 363 A.2d 121 (1975);Jennings v. Hariston, 23 Conn. L. Rptr. 1, 1999 Ct. Sup. 1580, 1582 (1999).
The only reported decisions addressing this issue were two decisions issued in 2000 by Family Support Magistrate Denese Chisholm Langley,Morrison v. Lindberg, 14 S.M.D. 345, 28 Conn. L. Rptr. 611,2000 Ct. Sup. 14094
(2000); and Figueroa v. Molina, 14 S.M.D. 318,28 Conn. L. Rptr. 336,2000 Ct. Sup. 13165 (2000). In each case, the court denied the request for the costs of the genetic tests not only because it lacked statutory authority to do so, but because (1) there was no evidence that the Department of Social Services provided any advance notice to the defendant when the test was ordered that he could be held responsible for the costs; (2) the Department of Social Services had failed to establish a "sliding scale" to determine how much of the cost should be paid by an individual in each case as provided by General Statutes §46b-168a(c)(3); and (3) because the State had failed to provide evidence of the actual costs incurred. CT Page 9757
This court is aware that these decisions have been reversed on appeal to the Superior Court. However, in neither case was a memorandum of decision filed to articulate the reasons for reversal. The entire order of the Superior Court reads: "The Decision of the Family Support Magistrate (Langley, F.S.M.) dated April 17, 2000 is reversed and relief is allowed Pursuant to Conn. Gen. Stat. Sec. 46b-231(n)."[4] There is nothing to guide a subsequent court as what error occurred in the opinions below or what the law the reviewing court relied upon. In fact, the decision may have resulted simply from the failure of the defendant below to brief or argue the appeal. If so, there was no controversy adjudicated. This court can not view these reversals as precedent for the present case.
This court does respectfully disagree with at least one aspect of Family Support Magistrate Langley's opinions. General Statutes §46b-168a(c)(3) requires the Commissioner of Social Services to adopt regulations "to establish criteria for determining . . . the ability of the requesting party to pay the costs of the genetic tests." In accordance with this requirement, the Commissioner of Social Services passed a regulation which sets forth the criteria for determining the ability of a requesting party to pay the costs of the genetic tests. Section 46b-168a-1 (c) of the Regulations of Connecticut State Agencies provides the following: "A putative father who requests genetic tests under [General Statutes § 46b-168a] and subsequently acknowledges paternity or is adjudicated to be the father of the child shall be liable to the state for the costs of making such tests if the IV-D agency or family support magistrate finds that such father has sufficient income under [the Child Support and Arrearage Guidelines] to pay current support for such child."[5]
The Department of Social Services regulation does not provide for a "sliding scale" when determining ability to pay. However, the statute does not require a "sliding scale." Rather, Department of Social Services has made the determination that if the requesting party is able to pay current support then he is presumed able to pay the total cost of the genetic tests. While it may be argued that this regulation is neither equitable nor what the legislature had in mind, it clearly conforms to the statute.
If this issue was the basis of the Superior Court's reversal, this court agrees with it. However, the Superior Court reversal is not sufficient to confer authority to this Division that the legislature did not grant. Absent clear statutory authority that is not apparent to this court, the request for an order requiring the defendant to pay the costs of the genetic test remains ultra vires[6] . CT Page 9758
Even if this court had the authority to order a party to pay the costs of an administratively ordered genetic test, the facts in this case would require that the court deny such a request. The defendant testified at the court hearing that he did not request the genetic test. Rather, he claims that it was the plaintiff mother that insisted on the DNA test. His testimony in this regard was not convincingly contraverted and the court finds it credible. Therefore, the court finds as a matter of fact that the defendant was not the requesting party.
The clear language of the statute provides that the putative father becomes liable for the costs of the genetic test only if he is the requesting party. Under all other circumstances the statute mandates that the cost of the test be paid by the State. Although an equitable argument might be made that the plaintiff, as the requesting party, should pay for the tests, the language of the statute clearly extends liability only to a requesting putative father[7] .
Accordingly, for the reasons stated, the State's request for costs is granted as to the costs of service of process and denied as to costs of the genetic test. The clerk may tax costs against the defendant to the State in the amount of $37.80.
Harris T. Lifshitz Family Support Magistrate